1  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzlez@mofo.com
2  WESLEY E. OVERSON (CA SBN 154737)
   WOverson@mofo.com
3  DIANA B. KRUZE (CA SBN 247605)
   DKruze@mofo.com
4  SHAELYN DAWSON (SBN 288278)
   ShaelynDawson@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482
   Telephone: 415.268.7000
7
   Attorneys for Plaintiffs
8

9             UNITED STATES DISTRICT COURT

10           EASTERN DISTRICT OF CALIFORNIA

11                  FRESNO DIVISION

12

13  CARLOS HERRERA AND ANNA HERRERA,        Case No.  _____

14              Plaintiffs,                 **COMPLAINT FOR VIOLATION
                                            OF SECTION 1983; WRONGFUL
15        v.                                DEATH**

16  COUNTY OF FRESNO, FRESNO COUNTY         **[JURY TRIAL DEMANDED]**
    SHERIFF'S OFFICE, AND DOES 1 THROUGH
17  20,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

This case illustrates what can happen when a governmental agency fails to properly care for persons who are in its custody.  Fresno County and the Fresno County Sheriff's Office ("Defendants") have a duty to ensure that persons in its custody are housed and supervised in a reasonable manner that takes into consideration their safety from other inmates.  Yet, in the past few years, more than a dozen inmates have died in Defendants' custody.  Many others have suffered serious injuries.  Because of Defendants' deliberate indifference to its duty to care for persons in its custody, a 19-year-old young man who had not been convicted of any crime was the latest victim to be killed in their jail.  What is especially tragic is that Defendants are under a court order to increase staffing at the jail to ensure that those in custody are properly supervised and cared for.  Defendants have sadly failed to comply.

Plaintiffs are the parents of the 19-year-old who was killed and have filed this lawsuit to fight for improved conditions and training at the Fresno County Jail ("the Jail") so that the killings might stop, and so that other parents do not suffer the same tragic loss.

**SUMMARY OF FACTS**

1. On March 24, 2018, Lorenzo Herrera was found dead in his cell at the Fresno County Jail.  It was lunchtime.  He had been strangled to death.  He was only 19 years old.

2. Mr. Herrera had been in the Jail since his arrest on January 18, 2018.  He had never been arrested before, and had pleaded not guilty.  Despite the fact that he had been convicted of nothing and was presumed innocent, he was forced by Fresno County into a dangerous Jail where more than a dozen other inmates have died in recent years.  Many others have been seriously injured.

3. Mr. Herrera was the son of Carlos and Anna Herrera and had graduated from Reedley High School just over a year before he was killed.  At Reedley High, he was a popular member of the football team and had never been in trouble with the law.  When he was arrested he was working as a custodian at Kings Canyon Unified School District.  Tragically, while the two men he was arrested with were able to make bail, Mr. Herrera's family could not come up with the money to get him out.

2

4.      In January 2018, Mr. Herrera had his whole life ahead of him—but he did not make it out of the Fresno County Jail alive.  In retrospect, this is not surprising.  The Jail that Mr. Herrera found himself in after his arrest was dangerously understaffed and contained violent inmates who should have been—but were not—housed in maximum security conditions.  The guards who were tasked with protecting Mr. Herrera were woefully undertrained.  And violent inmates were allowed to roam freely and enter the cells of other inmates, including Mr. Herrera's.

5.      Shockingly, despite the fact that Mr. Herrera was housed with violent inmates who could enter his open cell at will, ***none of the guards could see into his cell*** either from their elevated positions or on the video screens they monitored.  It turns out that the cameras were only pointed at the common areas of the Jail and did not have a zoom feature to peer into the cells.  Furthermore, the guards were only required to check on inmates in their cells once an hour.  This gave Mr. Herrera's killer all the time in the world to strangle him without any guard noticing.

6.      This lack of supervision has led to another tragedy for Mr. Herrera's parents: investigators claim that they still have no idea who killed their son.  Mr. Herrera was surrounded by other inmates—and supposedly guards and cameras—when he was killed in his cell around noon.  Under such circumstances it seems inconceivable that investigators would have no idea who killed Mr. Herrera.  But five months after Mr. Herrera's parents buried their son there are still no charges, no arrests, no answers.  This is the inevitable result of lax supervision, insufficient training, and a Jail facility that is completely inadequate to keep inmates—and Jail staff—safe.

7.      If all this were not enough, Mr. Herrera suffered from a painful medical condition that was exasperated by a blow to his head during the booking process.  He complained to Jail staff but was given only ibuprofen.

8.      These problems are not news to Fresno County and the Fresno County Sheriff's Office.  Fresno County is under ***court order*** to increase the number of guards at the Jail.  It has not complied.  And Fresno County has been told that housing violent felons in dormitory-style conditions with inadequate supervision is dangerous for both inmates and staff.  But Mr. Herrera was kept there against his will anyway.

sf-3917927

1

**JURISDICTION AND VENUE**

2      9.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 1983, and 28

3   U.S.C. §§ 1331, 1343, and 1367 as it presents federal civil rights claims against state actor

4   defendants, and related supplemental state law claims.

5      10.     Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391,

6   as the underlying acts, omissions, events, and injuries occurred in the County of Fresno,

7   California.

8

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9      11.     Pursuant to Cal. Gov't Code § 910, plaintiffs presented claims for damages to the

10   County of Fresno. All claims were denied on September 11, 2018.  This action was then filed in a

11   timely manner.

12

**THE PARTIES**

13      12.     Decedent, Lorenzo Herrera, was an individual residing in the State of California.

14   Mr. Herrera was unmarried at the time of his death and died intestate.

15      13.     Plaintiffs, Anna Herrera and Carlos Herrera (hereinafter "Plaintiffs"), are residents

16   of the State of California in the County of Fresno. Plaintiffs are the biological parents of the Mr.

17   Herrera and they sue in their individual capacity and as Successors-in-Interest to Mr. Herrera.

18      14.     Defendant, County of Fresno (hereinafter "County"), is an incorporated public

19   entity duly authorized and existing as such, in and under the laws of the State of California; and at

20   all times herein mentioned, Defendant County has possessed the power and authority to adopt

21   policies and prescribe rules, regulations, and practices affecting the operation of the Fresno

22   County Sheriff's Office and its tactics, methods, practices, customs and usage.  At all relevant

23   times, Defendant County was the employer of DOE Nos. 1 through 20 Defendants.

24      15.     Defendant, Fresno County Sheriff's Office (hereinafter "Sheriff's Office"), is a

25   local government entity created under the laws of California and an agency of Defendant County.

26   The Sheriff's Office is responsible for operating the Fresno County Jail (the "Jail") facilities,

27   including promulgating policies and procedures at those facilities.

28

4

sf-3917927

16.     Defendants, DOES, whose names and identities are unknown, are sued herein under DOE Nos. 1 through 20. Plaintiffs are informed and believe that DOE defendants are responsible in some manner for the damages and injuries hereinafter. Plaintiffs will amend the complaint and give notice to the DOE defendants upon learning their names and capacities.

## FACTUAL ALLEGATIONS

### Dangerous Facilities

17.     The Jail houses inmates in three buildings:  The South Annex, the North Annex, and the Main Jail.  On information and belief, Mr. Herrera was housed in the Main Jail on the day he died, March 24, 2018.  The Main Jail is a six-story structure that was originally built in 1989. It has more than a 1,000 beds and, according to a Jail Facilities Needs Assessment (the "Assessment") that was prepared for the County in 2013, it operates "significantly above the originally intended design capacity."  The Assessment is attached as **Exhibit A** to this Complaint.

18.     Most of the inmates in the Main Jail are kept in "pods."  Each pod has two tiers of cells—8 on the main floor and 8 on the second tier.  The 16 cells in each pod share a common dayroom that is accessible to all inmates in the pod.  The cells were originally designed to be double occupancy, but cells are now triple-bunked because of the need to hold more prisoners. With triple-bunking, each pod has a capacity of 48 inmates—one-third more than the pods were designed to hold.  There are six pods on each of the third, fourth, fifth, and sixth floors of the Main Jail.  With a 48-inmate capacity, this means that each floor can have almost 300 inmates housed in these pods.

19.     Inmates in these pods are not confined to their cells.  Instead, the cell doors in the pods are kept open for extended periods of time, which allows inmates to have free access to the dayroom and other cells.  One report to the County stated that "[e]ssentially, these floors have become very expensive dormitories."

20.     The almost 300 inmates on each floor are supervised by a surprisingly small number of correctional officers.  On information and belief, Defendants' normal practice is to have at least the following number of prison guards monitoring the inmates at all times under ideal circumstances: 1) a guard in a crow's nest above the six pods; 2) a guard in a video-

5

monitoring room; and 3) four guards conducting inspections inside the pods.  That is just a handful of guards for almost 300 inmates.  And circumstances are not always ideal.  As described more fully below, staffing levels are so low that the Jail cannot always maintain these six guards in each pod.

21.     On information and belief, the guards who are assigned to each floor have limited visibility into the individual cells, which are left open to all the inmates in each pod.  The cameras that monitor the pods cannot see into the individual cells because they are pointed only at the common areas and lack zoom capabilities to peer into individual cells.  And on information and belief, the guard in the crow's nest can only see the common areas of the pods.  The officers on the floors of the pods can inspect individual cells, but only do hourly checks on the inmates, allowing a lot of time for inmates to assault or even kill each other outside the supervision of the Jail's correctional officers.

22.     The County and the Jail have known for years that these overcrowded, dormitory-style pods are dangerous and insufficient for the inmate population that the Jail has been tasked with guarding.

23.     The Assessment, which was delivered to the County in 2013, stated that the Jail's population was "comprised of over 98% felons who are either largely violent, have significant mental health problems, severe and chronic substance abuse problems, and/or other special needs."  The Assessment also stated that the dormitory-style, low-security facilities were inadequate to house this violent inmate population. Specifically, the report states that "[t]his mismatch of physical jail-bed types versus the inmate profile . . . ***negatively impacts staff and inmate security***."

24.     The Assessment also noted that "given the makeup of Fresno County's inmate population, nearly all administrative segregation inmates should be housed in single and/or double bed cells, as opposed to the majority which are currently housed in dormitory style housing or are triple bunked in cells."  However, while the Jail "should have 1,043 single-bed cells," it only has 59.

6

sf-3917927

25.     As the Assessment notes, these problems not only makes conditions dangerous for inmates, but "negatively impacts staff . . . security," too.  For example, just weeks ago on September 4, 2018, an inmate who was arrested for murder in 2016 attacked to guards with a jail-issued razor slashing them several times in the face.

26.     On information and belief, the County and the Sheriff's Office knew or should have known that these dangerous conditions would and have led to injuries, rapes, and deaths of inmates at the Jail.

**<u>Understaffing</u>**

27.     In 2011, a group of Jail inmates filed a class action lawsuit against the County alleging the Jail failed to provide adequate health care and to reasonably protect prisoners from injury and violence.  In 2015, the County settled the lawsuit and entered into a consent decree by which it agreed to, among other things, improve medical care and hire additional correctional officers.  The County agreed to implement "a staffing plan designed ***to reduce inmate-on-inmate violence in the jails***."  The plan required the County to hire an additional 127 correctional officers over the next three years.  The consent decree is attached as **Exhibit B** to this Complaint.  The remedial plan, which specifies exactly what the County agreed to do, is attached as **Exhibit C**.

28.     The deadline for compliance with the consent decree is approaching rapidly, but on information and belief, the County has not come close to meeting this requirement.  On information and belief, the County has hired less than half of the officers required by the consent decree and the remedial plan.  As a result, the Jail remains understaffed and inmates, like Mr. Herrera, are dying as a result.  The raw numbers are shocking.  Despite the fact that the Jail holds only about 3,000 inmates, since 2013 more than a dozen prisoners have died while in custody at the Jail.

29.     On information and belief, since the beginning of 2016 at least nine inmates, including Mr. Herrera, have died while in the custody of the Jail:

- Eric Rios, April 8, 2016
- Daniel Telles, April 26, 2016
- John Mayberry, August 8, 2016

7

- Andrew Zavala, September 10, 2016

- Agustin Chavez, June 28, 2017

- Francisco Abel Delarosa, August 25, 2017

- Lorenzo Herrera, March 26, 2018

- Timothy Ray Flores, May 31, 2018

- Lorin Kane, Sr., August 1, 2018

30.     The County and the Sheriff's Office have known for years that the Jail is an overly dangerous place that is understaffed and ill-suited to hold the inmate population that it contains. The County has received reports detailing the inadequacy of its facilities and entered into a consent decree that required it to increase staffing levels.  But instead of fixing these problems and abiding by the consent decree, the County and the Sheriff's Office have allowed the problems to fester to the point where inmates are being hurt and killed.

31.     Mr. Herrera's death is a direct result of Defendants' failures.  Mr. Herrera, a first-time arrestee who had been convicted of no crime, was placed in a dormitory-style pod with violent offenders that the County knew should have been housed in a more secure facility.  Mr. Herrera was supervised by an inadequate number of correctional officers who could not see into the cell where he was killed.

32.     And even after he was killed, the lack of camera coverage and supervision means that—to this day—the Jail cannot say who killed him.  Despite the fact that Mr. Herrera was supposedly under constant supervision as an inmate, there has been no arrest of his killer or killers and investigators seem to have no clue who did it.

**Lack of Medical Care and Excessive Force**

33.     Before Mr. Herrera's arrest, he was diagnosed with a condition called a Chiari malformation.  Chiari malformations are structural defects where part of the brain extends below the opening of the skull that allows the spinal cord to pass through it.  This condition caused Mr. Herrera to have severe headaches.

34.     On information and belief, Mr. Herrera's medical condition was worsened when a member of the Sheriff's Office struck Mr. Herrera in the back of his head during the booking

process.  On information and belief, Mr. Herrera complained that he was suffering from severe pain because of his previous medical condition and the blow to his head.

35.     On information and belief, Mr. Herrera told Jail officials about his condition, the blow to his head, and the severe pain he was in. However, on information and belief, officials at the Jail gave him only ibuprofen, something that did nothing to alleviate his pain.

36.     Defendants County and Sheriff's Office, through their customs and policies, acted with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of the Mr. Herrera and Plaintiffs, by among other things:

   a.  Failing to take adequate security measures to protect detainees, arrestees, and inmates from unnecessary harm.

   b.  Failing to provide necessary and adequate medical care to treat and prevent injury and suffering.

   c.  Failing to take the necessary and adequate measure to train security officers in the proper detention and supervision of inmates at Fresno County Jail.

   d.  Using unnecessary force by striking Mr. Herrera in the head while he was in Defendants' custody.

### FIRST CAUSE OF ACTION
**(Fourteenth Amendment to the United States Constitution - 42 U.S.C. § 1983)**
**(Against All Defendants)**

37.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 36 of this Complaint.

38.     Plaintiffs sue on behalf of Mr. Herrera as his Successors-in-Interest for violations of the Fourteenth Amendment by Defendants County and Sheriff's Office for their deliberate indifference in failing to protect Mr. Herrera through their respective customs and policies of overcrowding and under-supervising the facilities of the Fresno County Jail and through their respective customs and policies of housing violent inmates in inappropriate dormitory-style pods.

39.     Defendants County and Sheriff's Office's deliberate indifference through their failure to act proximately caused the death of Mr. Herrera.

sf-3917927

**SECOND CAUSE OF ACTION**
**(Fourteenth Amendment to the United States Constitution - 42 U.S.C. § 1983)**
**(Against All Defendants)**

40.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 39 of this Complaint.

41.     Plaintiffs sue on behalf of Mr. Herrera as his Successors-in-Interest for violations of the Fourteenth Amendment by Defendants County and Sheriff's Office for their deliberate indifference in failing to provide adequate medical care to Mr. Herrera through their respective customs and policies at the Fresno County Jail.

**THIRD CAUSE OF ACTION**
**(Fourteenth Amendment to the United States Constitution - 42 U.S.C. § 1983)**
**(Against All Defendants)**

42.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 41 of this Complaint.

43.     Defendant County's deliberate indifference resulted in Mr. Herrera's death and rises to a level that shocks the conscience. As a result, Plaintiffs were deprived of their constitutional rights to a familial relationship with their son, as secured by the Fourteenth Amendment to the United States Constitution.

**FOURTH CAUSE OF ACTION**
**(Wrongful Death - Cal. Civ. Proc. Code § 377.60)**
**(Against County, Sheriff's Office, and DOE NOS. 1 through 20)**

44.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 43 of this Complaint.

45.     Defendants Sheriff's Office and DOE Nos. 1 through 20 owed a duty of care to Mr. Herrera while he was in their custody at Fresno County Jail as a pre-trial detainee.

46.     Defendants Sheriff's Office and DOE Nos. 1 through 20 were negligent in their failure to protect Mr. Herrera, and Mr. Herrera's death was actually and proximately caused by the negligence of these Defendants.

10

sf-3917927

47.     As a result of Mr. Herrera's wrongful death, Plaintiffs have suffered pecuniary losses resulting from the loss of comfort, society, attention, services, and support of their son. Further, Plaintiffs have incurred funeral and burial expenses.

**Prayer For Relief**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.     Compensatory damages, including both general and special damages;

2.     Exemplary and/or punitive damages;

3.     Attorney's fees and expenses under 42 U.S.C. § 1988(b); and

4.     Such other relief, including injunctive relief, as may be just or proper.

**Demand for Jury Trial**

Plaintiffs hereby demand a jury trial as to all causes of action.

Dated: September 20, 2018                    ARTURO J. GONZÁLEZ
                                             WESLEY E. OVERSON
                                             DIANA B. KRUZE
                                             SHAELYN DAWSON
                                             MORRISON & FOERSTER LLP


                                      By:     */s/ Arturo J. González*
                                             ARTURO J. GONZÁLEZ

                                             Attorneys for Plaintiff

sf-3917927