1        UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF CALIFORNIA
2                 --oOo--

3   CARLOS HERRERA, ET AL.,    ) Docket No. 18-CV-1297
                               ) Fresno, California
4              Plaintiffs,     ) March 18, 2019
                               ) 3:00 p.m.
5          v.                  )
                               )
6   COUNTY OF FRESNO, ET AL.,  ) Re: Motion to compel
                               )
7              Defendants.     )

8             TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE ERICA P. GROSJEAN
9           UNITED STATES MAGISTRATE JUDGE

10  APPEARANCES:

11  For the Plaintiff:      MORRISON AND FOERSTER, LLP by
                            MR. DAVID WIENER
12                          MS. DIANA BARRETT KRUZE
                            425 Market Street
13                          San Francisco, CA 94105

14  For the Defendant:      WEAKLEY & ARENDT, PC by
                            MR. JAMES D. WEAKLEY
15                          5200 N. Palm Avenue, Suite 211
                            Fresno, CA 93704
16
    Also Present:           BEVERLY BELL (paralegal)
17
    Court Recorder:         OTILIA ROSALES
18                          U.S. District Court
                            2500 Tulare Street, Suite 1501
19                          Fresno, CA 93721
                            (559)499-5928
20
    Transcribed by:         JENNIFER COULTHARD, RMR, CRR
21                          Official Court Reporter
                            501 I Street, Suite 4-200
22                          Sacramento, CA 95814
                            (312)617-9858
23                          Jenrmrcrr2@gmail.com

24  Proceedings recorded by electronic sound recording; transcript
    produced by official court reporter.
25

1    FRESNO, CALIFORNIA, MONDAY, MARCH 18, 2019

2                      --oOo--

3        (In open court.)

4        THE COURT:  Good afternoon.  This is the case of

5    Carlos Herrera, et al. v. County of Fresno, et al., 18-CV-1297

6    for a discovery dispute motion to compel, which is document 19.

7    Let me take appearances starting with the plaintiffs.

8        MR. WIENER:  David Wiener, Your Honor, my colleague

9    Diana Kruze.

10       THE COURT:  Thank you.  Good afternoon Mr. Wiener and

11   Ms. Kruze.

12       And for defendants?

13       MR. WEAKLEY:  James Weakly with my paralegal Beverly

14   Bell for the County of Fresno.

15       THE COURT:  Thank you.  Mr. Weakley and was it Bill?

16       MR. WEAKLEY:  Bell, B-E-L-L.

17       THE COURT:  Bell.  You know, I ask it every time but

18   it isn't on my docket so I have to ask it again.

19       Okay.  So I have reviewed the dispute papers, which

20   are in document 19.  What I think I'll do is give you my

21   tentative leanings as to each, and then I'll hear from the

22   parties and then either make a ruling or take under advisement.

23       So the first issue -- make sure I'm in the same order

24   as you all presented.  Well, I don't know if it is or it isn't.

25       Okay.  Well, the first -- one issue is how to deal

1    with discovery regarding the consent decree.  So there was

2    another case that dealt with conditions, and at the end of

3    those -- of that case it was resolved pursuant to a settlement

4    that included a consent decree regarding the conditions of the

5    jail and there have been discovery requests that refer to the

6    consent decree, including compliance with it.  And defendants

7    object that -- on relevance and also that it's barred by the

8    terms of the consent decree, which state neither the fact of

9    this consent decree nor any statements of claims contained

10   herein shall be used in any other case, claim or administrative

11   proceedings except that defendant and its employees and agents

12   may use this consent decree in any statement contained herein

13   to assert issue preclusion or res judicata.

14           I think where I come out here is that it -- it's

15   appropriate to ask questions that are also covered by the

16   consent decree but not asking about the consent decree.

17           While I understand plaintiff's position, and there is

18   some -- certainly some intuitive appeal that the consent decree

19   is an admission or is, you know, now binding on the jail and so

20   they would like to understand that that's for some sort of

21   notice or maybe a standard that might be relevant in finding

22   out whether there's been compliance.  I can understand why they

23   want to do that, but I also see that the consent decree, as I

24   said, does bar that.  It was not the end of a judgment that

25   came out of a jury trial.  It was the result of a settlement.

1          And it also just makes me uncomfortable to have an

2     issue in this case being are you compliant with your consent

3     decree.  That seems too much to touch into what is beyond the

4     jurisdiction of this Court.  That said, I -- I also don't think

5     it would be proper for defendants to object to questions on the

6     basis that it would be covered by the consent decree, so I -- I

7     think I come out that the discovery should be re-served without

8     reference to the consent decree along the line of -- and I'm

9     making up something, but how many guards you have, I don't

10    know, other issues regarding the conditions.  But not

11    specifically whether there's been compliance or not.

12         And it would also be my understanding that defendants,

13    as I think they're saying and would also be barred from using

14    the consent decree themselves.  So they would not be able to

15    say absent res judicata, which they haven't filed and could be

16    filed maybe, but they couldn't, at trial, say, "Well, of

17    course, we are compliant with the law because we entered into

18    this consent decree and we've been compliant with the consent

19    decree."

20         And that's both barred by the terms, but I guess I'm

21    saying if I make this discovery ruling, then defendants can't

22    use it because now they're barring plaintiffs from asking

23    whether you're compliant or not with that consent decree.

24         So I want to make clear that when defendants are not

25    producing discovery, they can't later say the consent decree is

1   some standard and they're compliant with that standard.

2          So that's my thinking of it.  Let me hear from the

3   parties, starting with plaintiffs.

4          MR. WIENER:  Thank you, Your Honor.  Thank you for

5   your consideration of these issues.  I think one thing I just

6   wanted to clarify, you know, that issue here is not whether

7   plaintiffs can ultimately use the consent decree at trial.

8          The discovery requests that we served do make

9   reference to the consent decree, but they don't depend on the

10  consent decree, and it's just -- to bar discovery into these

11  issues that are framed by the consent decree isn't supported by

12  that provision that you quoted or any authority that defendants

13  have provided to you.  So I think I would, respectfully,

14  disagree on that point.

15         Whether and to what extent the decree can ultimately

16  be used is a question for another day.  But I think the

17  discovery here, just because it references the consent decree,

18  I don't think that makes it an invalid subject of discovery.

19         THE COURT:  When you say it's for another day, I mean,

20  what is any way that you think that it could be used?

21         MR. WIENER:  So I think we cited a few cases in there

22  about use of prior settlements as not for an admission of

23  liability but as a kind of an idea of notice, and we have

24  provided some authority in situations where that's appropriate,

25  but, again, I don't think that's the issue here today.

1          We would appreciate the opportunity to fully brief

2    that later on, if that became an issue.

3          THE COURT:  Well, it's true that I think I am

4    probably -- I'm not making a decision, but it's based on the

5    assumption you will not be able to use it.  Did -- in those

6    other cases was there something in the terms like there is here

7    that said that they can't be used?

8          MR. WIENER:  I think those cases do not involve a

9    specific discussion of a term like that.

10          THE COURT:  Uh-huh.  Okay.  Okay.  Let me hear from

11    defendants.

12          MR. WEAKLEY:  Your Honor, actually, the Court's set

13    out our position.  We've not refused to engage in discovery.

14    And we even suggested that if -- if their discovery was

15    reworded, we could easily answer it, but we can't reference the

16    consent decree.  And counsel just said that they're not

17    dependent upon the consent decree, yet they are.  I mean, for

18    us to answer, we have to depend on the consent decree.

19          THE COURT:  Uh-huh.

20          MR. WEAKLEY:  So that's our position, Your Honor.  I

21    think the Court has very accurately set it out.

22          THE COURT:  I don't know if it's before us, but we

23    should -- there's something in between, I don't know if it's

24    been teed up.  What about requests for documents that have been

25    given in the course of the case?  I notice in looking at the

1    consent decree, for example, there's reports that need to be

2    provided to that court regarding conditions.  Do you object to

3    those.

4            MR. WEAKLEY:  I don't know what the terms of the

5    consent decree are as far as the confidentiality of documents.

6    I know that the prison law organization gets numerous records,

7    including records which would normally violate HIPAA, I think,

8    but, you know, they're entitled to that pursuant to the

9    settlement within the class action lawsuit.

10           Then there's -- there are times when the prison law

11   group, by the terms of the settlement, are able to come into

12   the jail and monitor compliance.  And then there's a whole

13   process that they go through, a meet-and-confer process if --

14   if the prison law organization believes there's some lack of

15   compliance somewhere.  But, again, I don't know -- because I'm

16   not really involved in that case, I don't know whether records

17   are produced confidentially or under a protective order of some

18   sort.

19           THE COURT:  Okay.  And you're willing to, you know,

20   live and die by this decision meaning you are not planning to

21   enter either summary judgment, trial or any other time as a

22   defense, setting aside res judicata, that your compliance, or

23   lack thereof, of the consent decree or those terms are relevant

24   at all to this lawsuit?

25           MR. WEAKLEY:  Except for res judicata, Your Honor,

1     correct.

2          THE COURT: Okay. Also, what do you say, too, that

3     there are cases that sometimes do allow settlement agreements

4     to be admitted for the purpose of notice?

5          MR. WEAKLEY: I haven't had a chance to brief that,

6     Your Honor. In my experience, there are some judges that will

7     allow certain types of settlements to come in for limited

8     reasons, but at the same time, they're never an admission of

9     liability. They come in for some particular notice issue or

10     something of that nature. And I'm not aware of any that would

11     involve the issues that we have here with the consent decree

12     and the specific language in the consent decree.

13          THE COURT: Do you -- do you want to point me to a

14     case or a portion of the opposition? I'm considering ruling

15     from the bench, but I haven't looked closely at those and want

16     to see whether that's something that I need to look at.

17          Where do you want to direct me?

18          MR. WIENER: So it's on page 1 of our reply brief in

19     footnote 1.

20          THE COURT: Okay. Plaintiff notes that courts

21     regularly hold that prior settlements are admissible to show a

22     defendant's awareness of allegations of prior misconduct.

23          And so one's a Fourth Circuit case, prior settlement

24     of police brutality action admissible to show that the city was

25     sufficiently aware of the existence of a developed practice or

1    custom of such conduct.  And then *Green v. Baca* from the

2    Central District of California, prior settlements admissible to

3    show that defendant was on notice that there was an

4    overdetention problem at the facility.

5              Do you want to say anything to that, Mr. Weakley?

6              MR. WEAKLEY:  I haven't had a chance to read these

7    cases, Your Honor.

8              THE COURT:  Okay.

9              MR. WEAKLEY:  I really haven't had a chance to brief

10   this.  I didn't know that the admissions of a settlement was

11   going to be an issue here.

12             THE COURT:  Okay.

13             MR. WIENER:  But, Your Honor, I think that's kind of

14   our point.  The actual substantive use of the consent decree as

15   an admission or for some other purpose is not really raised by

16   this discovery dispute.

17             THE COURT:  Uh-huh.

18             MR. WIENER:  What plaintiffs are trying to get are --

19   is information in documents about the actions the county has

20   taken since the consent decree was issued.

21             And I think the example that Your Honor provided is a

22   good one, and I think that would be encompassed by -- at least

23   in part by RFP No. 12, which asks for documents that reflected

24   the county's compliance with the consent decree.  And that

25   would include, you know, actions taken by the county since the

1    consent decree was issued.  And I think that those documents

2    and that information is discoverable.  It's not rendered not

3    discoverable by the fact that the RFP refers to the consent

4    decree.  And there's nothing in the consent decree that would

5    have such a sweeping effect as to preclude discovery on those

6    issues.

7         THE COURT:  Okay.  I think I'm going to take this

8    under advisement.  I think I agree with what I said, but I want

9    to look at those cases and also a little bit more about these

10   requests, meaning I don't know if the magic word is don't use

11   the word consent decree in terms of I did think that it was

12   possible that asking for documents that might be generated for

13   the purpose of showing compliance with a consent decree might

14   be subject to discovery, maybe, or -- or -- or a time period

15   that says after the consent decree what did you do, and I

16   think -- I'm kind of thinking it aloud, and that's why I want

17   to take it under advisement.  I want to get to something that

18   is admissible that is not about us adjudicating the consent

19   decree.

20        And on the other extreme, again, is I don't like

21   questions that suggest are you in compliance with the consent

22   decree.

23        And then I do want to look at the settlement.  None of

24   them -- the citations you have aren't binding on me, but I

25   guess I'd just like to take a look at that before I make my

1  final ruling.  But that's -- that's my strong tentative, we'll

2  call it.  And I think until -- well, it's already a motion to

3  compel, so you don't have to produce it until -- until I rule.

4          Plaintiff's, you might want to start thinking, though,

5  about how you might revise this discovery to also ask similar

6  questions that aren't specifically so referenced to the consent

7  decree.  So, for example, if you had something like "Who are

8  the officers you put in pursuant to the consent decree?" maybe

9  just "Who are the officers you put in?" okay?

10          MR. WEAKLEY:  Your Honor, if I may?

11          THE COURT:  Yes.

12          MR. WEAKLEY:  Actually referring to a case cited by

13  the plaintiff on the consent decree issue, the *Washington* case

14  actually supports our position.  The *Washington* case the Court

15  would not accept a consent decree that had language similar to

16  this.  And they said they would accept this consent decree only

17  if the language similar to paragraph 22 in our consent decree

18  was removed, where Judge O'Neill specifically accepted

19  paragraph 22 in his order accepting all the terms in the

20  consent decree in ordering compliance.

21          THE COURT:  Okay.  So you're saying it might be

22  distinguishing on that paragraph that I read from Judge

23  O'Neill, which, you know, is something that might be a

24  distinguishing factor.  Okay.  Okay.

25          Let's move -- the next issue or another issue is about

1    the scope of complaints for the defendant guards.  And I

2    understand that plaintiffs have asked for all the complaints

3    and defendants have limited it to five years and have limited

4    it by subject matter.  And I don't remember the exact subject

5    matter.  I can look it up, if I need.

6          My thought here is -- and I don't -- I don't have a

7    firm conclusion yet.  Five years doesn't sound unreasonable to

8    me.  If -- I'd hear from plaintiffs if you want a little bit

9    more.  And it would have to be -- and it can be before or after

10   the time, so five years before the incident or since the

11   incident, something like that.  That seems okay.

12         Regarding the other types of complaints, that one

13   makes me a little more uncomfortable.  I'd be interested in

14   finding out if there's a burden of providing all of the

15   complaints.  The real issue here is I'm worried about

16   defendants making the call about which complaints fall under

17   what category.  And I don't see -- you know, so it's a

18   relevance versus burden or prejudice.

19         I would feel more comfortable, certainly, if all the

20   complaints, with maybe a limitation on time period, were

21   produced.  If they're not relevant, they're not relevant.  And

22   some of these aren't.  But the complaints don't have check the

23   boxes.  They're just a narrative.  And so categorizing them is

24   not so easy as defendants portray.  And I want to ensure that

25   the relevant information does come through and at risk that

1   there's a little overproduction doesn't really bother me.  So I

2   guess on that let me hear from defendants.

3           MR. WEAKLEY:  First of all, Your Honor, the

4   correctional officers, not really guards but the correctional

5   officers are not defendants in the lawsuit.  I don't know that

6   there's necessarily a burden.  I mean, we're hoping during the

7   meet and confer that we could get the plaintiffs to more

8   clearly define the types of complaints that they thought were

9   relevant, and we couldn't get any kind of concession, so we're

10  kind of -- you know, here we are.  So I don't think there's

11  necessarily a burden as far as types of complaints.  There's

12  certainly going to be as far as time frame and how far you go

13  back and that sort of thing, but, you know, I know this Court

14  has dealt with prison cases and jail cases, and, you know,

15  sometimes we get complaints that prisoners aren't getting their

16  mail in time or their food's cold or, you know, there's all

17  sorts of ridiculous things they complain about.

18          THE COURT:  What's the harm in producing them if it's

19  not a burden?  So you have stupid complaints.

20          MR. WEAKLEY:  Yeah.  I don't think it will be a

21  burden, Your Honor.

22          THE COURT:  Okay.

23          MR. WIENER:  So, Your Honor, I think on the time

24  issue, again, for the reason that counsel just stated, there's

25  been no showing of a burden for going beyond five years, so

JENNIFER COULTHARD - OFFICIAL COURT REPORTER - USDC - (312)617-9858

1   we'd ask the Court to expand that to ten years, absent some

2   articulation of why that would be burdensome.

3          And then the other point I just wanted to raise here,

4   I think we also just wanted to make sure that defendant's

5   production would include the county's response, if any, to

6   those complaints from inmates, which I think is called for by

7   our request.  And the county's response at least implies that

8   the only thing that will be produced is the grievances

9   themselves.

10          THE COURT:  Okay.  So you're asking ten years from

11  today or ten years from the incident?  When are you --

12          MR. WIENER:  Ten years from today.

13          THE COURT:  Ten years from today.  And when was the

14  incident?

15          MR. WEAKLEY:  2015.

16          THE COURT:  Okay.  So it would include --

17          MR. WEAKLEY:  I'm sorry, 2018.

18          MR. WIENER:  Yeah.

19          THE COURT:  2018?

20          MR. WEAKLEY:  Yes.

21          THE COURT:  Okay.  Okay.  So it's just -- it's really

22  just one year from it and then eight years.

23          Mr. Weakley, is there a burden to add those extra few

24  years?

25          MR. WEAKLEY:  I don't know, Your Honor.  There is an

1   issue involving the official information and Peace Officer Bill

2   of Rights if we're talking about getting into certain types of

3   complaints.

4          And there's certain issues that the plaintiff claims

5   that they have that they really don't have in their pleadings;

6   for example, the retaliation and corruption.  They're saying

7   that we should turn over all those complaints, but they haven't

8   even pled anything like that, so it really is far beyond the

9   relevance of the issues in this case.

10  THE COURT:  Okay.  I don't hear a burden regarding the

11  dates, so I will allow ten years from today, just to pick a

12  date.  And I am going to order all of the complaints regarding

13  the correctional officers at issue.

14         If there is a privilege, a privilege objection, which

15  was not briefed, and I would include on the Bill of Rights,

16  then it should be, I guess -- well, you're sophisticated enough

17  counsel.  I guess you can do a privilege log and plaintiffs,

18  you can bring it to my attention.  I will tell you I -- on

19  these issues, and especially the official information

20  privilege, I'm someone who thinks that I should do an in camera

21  review, that's what I do in other prisoner cases, and I -- I

22  would be -- my inclination is that the -- is that the Peace

23  Officer Bill of Rights should not bar production in this case.

24  Now, there's a court order to do so.

25         So I would tell defendants, invoke that lightly.  You

1   have to do a log, and the log would have to be grievance by

2   grievance.

3        And then plaintiffs, if you want to bring it to my

4   attention after that time, you can.

5        I am requiring all.  I do see some relevance without a

6   burden and -- and I'll reiterate what I said before.  It's not

7   that I think every single complaint will be relevant to this

8   issue, but I think that the difficulty in -- in saying which

9   ones without looking are or aren't relevant based on a category

10  when there's no defined categories on the grievance I think has

11  a risk that relevant information will be omitted; whereas, I

12  don't really see any harm in having not relevant information

13  produced, since there's no burden.

14       And the examples given, for example, you missed my

15  food, which very well might be there, I really don't see any

16  harm in plaintiffs having them.

17       Okay.  So that's my ruling on that.

18       MR. WIENER:  Your Honor, before --

19       THE COURT:  Yes.

20       MR. WIENER:  -- we move on, I just wanted to clarify

21  on the point about the responses to the grievances.  Are you

22  including that?

23       THE COURT:  Oh.  Sorry.  I forgot about that.  Are you

24  including the responses to the grievances?

25       MR. WEAKLEY:  I'm not sure how they worded their

1    request.

2            MR. WIENER:  So I believe the request is for all

3    documents relating to a complaint, which would include the

4    county's response.

5            MR. WEAKLEY:  Depending on the nature of the

6    investigations, that could be much more time consuming.

7            THE COURT:  Thinking aloud, what if we have that you

8    see the grievances and then you request the responses and --

9    and you produce them upon request unless there's some really

10   big objection but probably not?  And what -- this is my

11   thought:  I don't think you're going to request ones where it's

12   just a meal.  I think then you're going to request a response

13   when it's relevant the way you define what's relevant.  And as

14   long as you do so, then you can get the backup documentation,

15   but I do think there could be -- my inclination to include

16   everything when we start having back-up documents does make

17   that more burdensome.  So how does that sound, a two-part

18   process?

19           MR. WIENER:  I think that sounds fine, Your Honor.

20           THE COURT:  Okay.  So defendants shall provide the

21   grievances for the correctional officers at issue without

22   limitation on subject matter for ten years from today.  And

23   then upon receipt -- can you do it in thirty days just to say

24   something?

25           MR. WIENER:  That should be fine.

1    THE COURT:  Okay.  Thirty days after receipt of those

2    grievances, plaintiffs may request all related documentation

3    for specific grievances and -- and then defendants shall

4    provide that documentation; or, if there's an objection, bring

5    it to the Court's attention.

6    MR. WEAKLEY:  Yes, Your Honor.

7    THE COURT:  Okay.  I don't know if more issues might

8    arise from that.  My hope is you say, now, this is an excessive

9    force, this is a -- this is a failure to respond, then you'll

10   just give the response.  But when I say "related documents,"

11   sometimes there's things I don't see, so you can always come to

12   me if there's something I didn't see.

13   Okay.  I think the last issue was the response to

14   requests for admission, and those requests for admission

15   included questions -- and I'm not going to quote them exactly,

16   but they're -- they're questions about the level of danger that

17   certain situations have, and defendants object on vagueness and

18   noting that there's some qualifications that need to be done.

19   My inclination was to require a response.  I am sure that that

20   response will be qualified.  And, in fact, the defendant's

21   brief, itself, I think had the type of qualifications that I

22   would expect, but I didn't see anything wrong with the

23   requests.  I know that danger is a hot button word, but it is a

24   word that I think is relevant here.  And the way that I think

25   about it is, could you ask that of the person on the stand, and

1    we would probably allow that; although, I expect the person on

2    the stand would have a lot to say about it not being that

3    simple.

4          For example, I think defendants wish to make a -- you

5    know, qualifications that danger in the context of a jail

6    situation with violent criminals, you know, is an inherently

7    dangerous situation and making some comparisons of this versus

8    that.  That's fine.  But I didn't -- I wasn't persuaded by

9    defendants that it was so objectionable as not to provide any

10   answer.

11         Mr. Weakley?

12         MR. WEAKLEY:  Well, Your Honor, the problem with the

13   word "dangerous" is like Justice Thomas said in the *Farmer*

14   case, jails are inherently dangerous.  Everything in a jail is

15   dangerous.  So, I mean, that would be the qualification that,

16   you know, if you put two methamphetamine manufacturers together

17   without a violent history, one of the definitions of dangerous

18   is, is they're likely to be engaged in repeated criminal

19   activity.  Well, yes.  That would be dangerous even though

20   there's no violence in their history.  So really trying to

21   answer the questions the way the plaintiff has phrased them is

22   almost impossible without very lengthy qualifications.

23         THE COURT:  Can you show which exhibit they are so we

24   can look at some?

25         MR. WEAKLEY:  Which, request for admission?

1          THE COURT:  Yes.  So to -- plaintiff, so I have your

2     motion.

3          MR. WEAKLEY:  Yeah.  For example, Request for

4     Admission No. 11, "Admit that it's dangerous to put an inmate

5     who has no history of violence in the same pod as an inmate who

6     has a history of violence."

7          THE COURT:  Uh-huh.

8          MR. WEAKLEY:  Well, I -- you know, could you be

9     creating a situation that's likely to -- where there's inmates

10    are likely to engage in repeated criminal activity?  Yes.  That

11    would be dangerous.

12         THE COURT:  Okay.

13         MR. WEAKLEY:  That's dangerous for any inmate.  Any

14    inmates that are housed together is potentially dangerous.

15         THE COURT:  Okay.  Plaintiffs?

16         MR. WIENER:  So I think Your Honor was exactly right

17    where you were leaning.  I think that as counsel has kind of

18    made clear, he can answer this question.  Now, what they might

19    want to add a qualification along the lines of what he's said

20    here today, and I think that's fine.  We can kind of go from

21    there depending on what that answer is.  But providing no

22    substantive response doesn't really give us anywhere to go

23    beyond having that response so that we can figure out where to

24    go from there.  So I think Your Honor was exactly right.

25         MR. WEAKLEY:  Your Honor, I frankly think that it's an

1   impossible question to answer, and that's why we answered it

2   the way we did.

3       THE COURT:  I don't think these are impossible

4   questions and, again, if they were put to a witness in front of

5   a jury, I'd allow the witness to answer it.  I think, indeed,

6   it might only be lawyers that find this a completely -- you

7   don't even understand the answer or the question.  And I

8   think -- I'm not sure what will come out of it regarding what

9   danger means, but I guess if you're saying danger is

10  meaningless, I don't agree with that.  And nor do I agree that

11  every situation in a jail is the same level of danger and

12  always completely dangerous.

13      I also think that making you answer these has some

14  function, and that is making you take a stand before you go in

15  front of a jury, for example, and I don't know, but I could see

16  some of your witnesses testifying along these -- along these

17  lines in their testimony.  I'm making up something completely

18  made up, but just to show the type of thing that might happen,

19  I could see a correctional officer saying, "I have different

20  levels of danger, and we would never put so and so together,

21  but we do put so and so together and we look at the different

22  levels of danger and these are factors."  I think these are the

23  type of testimony that we might see.  And so for -- it is

24  appropriate for the plaintiff to elicit.

25      Put another way, if you respond, "I don't even know

1  what the danger means and I can never make any assessments like

2  that," you're making some strategic choices about what your

3  witnesses can and can't say.  So that's just to say -- my

4  only -- as your discovery judge is saying is this so vague that

5  it does not have an answer and no information can be garnered

6  from it, and I don't think that's the case, so I -- I will

7  require an answer to the request for admission, and we'll see

8  what comes out of that.

9           Okay.  Were those the issues or --

10          MR. WEAKLEY:  Yes.

11          THE COURT:  -- are there other issues?

12          MR. WEAKLEY:  I think that's it, Your Honor.

13          MR. WIENER:  That's it, Your Honor.  I would ask that

14  if the Court needs any further briefing on that consent decree

15  issue, we'd be happy to do that.

16          THE COURT:  Okay.  Okay.  Well, I appreciate that.

17  I'm going to look at it.  Anything else that we need to talk

18  about while we're together?  I don't have anything on my mind,

19  but I see you're all here, and it's nice to see you.

20  Mr. Weakley or Ms. Bell?

21          MR. WEAKLEY:  I don't -- I don't think so.

22          THE COURT:  Okay.  Okay.  Mr. Wiener and Ms. Kruze?

23          MS. KRUZE:  Your Honor, what's the time frame for the

24  requests for admission that need to be responded to?

25          THE COURT:  How about thirty days, could you do that,

1  Mr. Weakley?

2          MR. WEAKLEY:  Yes.

3          THE COURT:  Okay.  Thirty days for the requests for

4  admission.

5          Okay.  I'll do a confirming order, but I think at

6  least especially on the ones that I ruled on, I have already

7  ruled on them, and it will just say "Incorporating the reasons

8  that were described on the record," but I'll write it down

9  also.

10         Okay.  Well, it is nice to see you all, and Court is

11  adjourned.  Thank you.

12         MR. WEAKLEY:  Thank you, Your Honor.

13         MS. KRUZE:  Thank you, Your Honor.

14     (Concluded at 3:30 p.m.)

15

16              C E R T I F I C A T E

17

18     I, court-approved transcriber, certify that the foregoing

19  is a correct transcript from the official electronic recording

20  of the proceedings in the above-entitled matter.

21

22

   */s/ JENNIFER L. COULTHARD*          March 29, 2019

23                                          DATE

24  JENNIFER L. COULTHARD, RMR, CRR
    Official Court Reporter

25